IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TED LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 08-74-KI |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

KING, J.,

Plaintiff Ted Lewis challenges the Commissioner's decision denying his applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI of

the Social Security Act.  I have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  I AFFIRM the

Commissioner's decision.

The administrative law judge ("ALJ") applied the five-step sequential disability

determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920.  *Bowen v. Yuckert*, 482 U.S.

137, 140 (1987).  The ALJ determined that Lewis retained the residual functional capacity ("RFC") to perform work he has done in the past.  In addition, he identified other work in the national economy which a person with Lewis's RFC would be able to perform.  The court reviews that decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

Lewis argues the ALJ improperly evaluated the evidence of his RFC and elicited testimony from the vocational expert ("VE") with assumptions that did not accurately reflect his functional limitations.  Lewis contends the faulty vocational testimony undermined the ALJ's conclusion that he retains the ability to work.

## I.    RFC Assessment

The RFC assessment describes the work-related activities a claimant can do on a sustained, regular and continuing basis, despite the functional limitations imposed by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184.  The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions.  SSR 96-8p, 1996 WL 374184 * 5.

Lewis contends the ALJ did not properly evaluate his testimony, the written statement of lay witness Ken Williams, and three medical reports.  He argues the ALJ failed to develop the record regarding his mental impairments and did not comply with the requirements of SSR 96-8p.

### A.    Lewis's Testimony

Lewis alleged he became disabled on January 20, 2003, due to back and neck pain, balance problems, tremors in the right hand, depression, and problems with memory and judgment.  Admin.

R. 64, 87.  He testified that he developed back pain and balance problems after being involved in a

motor vehicle accident in November 2002.  Significantly, he continued to work until January 20,

2003, when he was laid off for reasons unrelated to his alleged medical condition.  He then collected

unemployment benefits until April 2004.  *Id.* at 373-74, 377.

  Lewis testified he could sit for 20 to 30 minutes at a time, after which he had to get up and

move around.  He could stand or walk for 20 to 30 minutes at a time before his back would begin

to hurt.  He could not estimate the total time in an 8-hour day that he could sit, stand, or walk.  He

could not estimate the maximum weight he could lift or carry.  *Id.* at 380-82.  Lewis said tremors in

his right hand make it difficult for him to write or engage in fine motor activities.  *Id.* at 385.  He

also loses his balance easily, particularly when turning his body to the right.  *Id.* at 386.  Lewis

testified he did not like being around people, avoids people as much as possible, and tends to get

angry easily around others.  He also claimed poor concentration and poor memory for instructions.

*Id.* at 383-84.

  The ALJ accepted that Lewis has impairments limiting him to a restricted range of medium

work, excluding skilled work and work requiring constant motor use of his right dominant hand or

more than short structured contact with the public.  *Id.* at 32.  The ALJ rejected Lewis's assertions

of functional limitations in excess of this RFC assessment.

  In deciding whether to accept subjective statements, an ALJ must first determine whether the

claimant has produced objective medical evidence of an underlying impairment that could reasonably

be expected to produce the symptoms alleged.  *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir.

1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The ALJ did not challenge the

existence of medical impairments that could produce some of the symptoms Lewis alleged, but

found Lewis's statements about the intensity, persistence, and limiting effects of those impairments not entirely credible. *Id.* at 32.

An ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of treating sources and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; SSR 96-7p, 1996 WL 374186.

The ALJ found the objective medical evidence, treatment records, and reports of medical providers did not support Lewis's assertions of debilitating back pain. Lewis had two episodes of back pain before the alleged onset of disability. In July 2001, he experienced a lumbar strain while pulling the starter cord of a pressure washer. He was off work for one month, but by September 2001, was completely asymptomatic. Admin. R. 177-82, 205. In February 2002, he experienced back pain after tripping over a cart in a store. He alleged severe back pain, but did not seek treatment until May 2002. Rebecca Kennedy, M.D., then obtained normal clinical findings and noted "I do not support any sort of disability for him." *Id.* at 189. In July 2002, he claimed subjective chronic back pain, but this was well managed with Ibuprofen and chiropractic care. Lewis's physician declined to complete disability paperwork Lewis requested, noting Lewis "has a tendency towards seeking disability for back pain despite back exam being relatively normal. . . I do not see him to be a disabled person." *Id.* at 187-88.

Lewis did not require treatment for back pain again until February 2004.  Notably, it was during this long interim that Lewis allegedly became disabled in January 2003.  In February 2004, he complained of back pain to Sara Becker, M.D., who obtained relatively normal clinical findings, including a negative straight-leg-raise test for radiculopathy. Dr. Becker suggested potential contributing sources might include a foreshortened leg, a lumbar strain, or possible disc degeneration at L5-S1.  She did not reach a diagnosis however.  Lewis asked Dr. Becker if he qualified for disability and she indicated she did not believe he was disabled.  *Id.* at 238.

In July 2004, Lewis complained of right lower back pain after walking on uneven ground. David Silver M.D., obtained relatively normal findings and diagnosed a strain which he expected to resolve within 5 days.  *Id.* at 237.  In August 2004, an MRI of the lumbar spine revealed a bulging disc at L3-4 with mild spinal cord canal compromise.  There was a smaller mild disc bulge at L4-5. *Id.* at 287.  Lewis did not report back pain again for nearly two years.

On July 17, 2006, he reported a new onset of back pain which had commenced one week earlier.  Larry Moffett, M.D., obtained generally normal clinical findings, except Lewis had a positive straight-leg-raise on the left.  *Id.* at 294-95.  An MRI of the lumbar spine showed the same degenerated bulging discs at L3-4 and L4-5.  There was evidence of mild forminal encroachment on the right side, opposite the side indicated by his straight-leg-raise.  *Id.* at 290.  At the followup examination, Dr. Moffett obtained normal findings, including negative straight-leg-raise tests.  *Id.* at 291-93.  There are no further findings regarding Lewis's back.

The ALJ could draw an adverse inference as to credibility from Lewis's failure to seek treatment for his allegedly disabling back pain until over a year after he allegedly became disabled. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  The ALJ could reasonably find the progress

notes showed intermittent and episodic back pain associated with discrete events, rather than constant persistent functional impairment.  The ALJ could draw an adverse inference from the medical opinions indicating Lewis has a tendency to portray himself as disabled, which manifested well before he stopped working at the alleged onset of disability.

The medical evidence does not support any ongoing medically determinable impairment that could reasonably be expected to produce Lewis's alleged balance problems.  Lewis reported symptoms of imbalance only once, to Dr. Becker in March 2003.  Admin. R. 240.  The ALJ could reasonably expect that an individual experiencing ongoing balance problems would seek medical help to resolve them.  Lewis's failure to do this reflects adversely on the credibility of his subjective claims.

The medical evidence suggests Lewis overstated the intensity and limiting effect of the tremors he experiences in his dominant right hand.  Lewis first sought treatment for the tremors in March 2003.  Dr. Becker described it as a "forced tremor" without increased rigidity, pill rolling, or decrease of motor strength.  *Id.* at 240.  Dr. Becker ordered an MRI of the brain, which was negative for any intercranial process that might produce the tremors.  *Id.* at 240, 246-47.

Lewis next complained about the tremor in March 2004.  He told Dr. Becker he thought there was something major wrong with him and that he should be disabled.  Dr. Becker described the tremor as "very intermittent." *Id.* at 238.  She noted "when I am not looking at him his hand is steady.  When I am glancing at his hands he tenders to make his thumbs shake.  There is not a genuine cyclic tremor there." *Id.*  Dr. Becker's neurologic examination was unremarkable.  A CT scan of the neck and head did not explain the symptoms.  Dr. Becker referred Lewis to a neurologist for further evaluation, but Lewis did not followup.

In October 2005, Lewis established care with Dr. Moffett and indicated he thought his tremor was progressing. Dr. Moffett prescribed a beta blocker medication. *Id.* at 282-84. In February 2006, Lewis told Dr. Moffett the tremor had slowed significantly with increased doses of the beta blocker. *Id.* at 273-74. Lewis did not complain of tremors again through the close of the record.

The ALJ could reasonably conclude from the foregoing medical evidence that Lewis has no more than an intermittent tremor that is largely controlled by medication. He could reasonably believe Lewis attempted to exaggerate the tremor during his evaluation by Dr. Becker. He could reasonably draw an adverse inference as to the credibility of Lewis's claim of severe impairment from this condition.

Lewis has a medical history of depression predating the alleged onset of disability. He complained of stress, depression, and difficulty concentrating in June 2001 and began taking Paxil. *Id.* at 243. After one month, he was doing well on the medication without current symptoms. *Id.* at 242. In December 2001, he was still doing well on Paxil and reported he was not depressed. *Id.* at 191. In July 2002, he reported his depression was under good control with Paxil. *Id.* at 187. He did not mention depressive symptoms again until September 2003, when he associated his feeling of being down in the dumps with a recent death in his family. It is again notable that Lewis's alleged onset of disability occurred in the long interim during which he had no depressive symptoms. Dr. Becker restarted his Paxil prescription which he had apparently discontinued. By October 2003, Lewis was reportedly doing fairly well. *Id.* at 239-40.

In May 2004, Lewis underwent a psychodiagnostic evaluation by Luke Patrick, Ph.D. Dr. Patrick found Lewis's cognitive functions generally intact. Lewis demonstrated the ability to follow 3-step verbal commands and simple written commands. Dr. Patrick noted a tendency to exaggerate

problems with short term memory and concentration as well as physical symptoms.  He concluded Lewis was "at worst mildly impaired in terms of understanding and remembering instructions." *Id.* at 234.  Lewis's ability to maintain concentration and attention likely ranged from mildly to moderately impaired, but he retained the ability to persist in work-related tasks.  Dr. Patrick found Lewis's ability to engage in appropriate social interactions "mildly to moderately limited by his antisocial and hypocondriacal personality features" indicated by his self-reported criminal history and his tendency to feign or exaggerate symptomatology.  Dr. Patrick could not rule out malingering. *Id.* at 234-35.

In July 2004, Lewis sought counseling therapy with Thomas Deshler, Ph.D., on the recommendation of Dr. Patrick.  Lewis told Dr. Deshler he did not like many people and felt life was unfair to him.  *Id.* at 248-50.  The record shows Lewis participated in two counseling sessions with Dr. Deshler.

In January 2006, Dr. Moffett noted Lewis's depression and anxiety were well controlled following a change in medications.  Lewis was taking Zoloft without side effects.  *Id.* at 276-77.  In April 2006, Lewis told Dr. Moffett his anxiety and depression remained under good control and he appeared well, alert, oriented, pleasant, and cooperative.  *Id.* at 267-68.  This continued until August 2006, when Lewis reported episodes of uncontrolled depression despite compliance with his Zoloft prescription.  Dr. Moffett then increased the Zoloft dosage.  *Id.* at 291-93.  Lewis did not report depressive symptoms again until he met with Dr. Deshler after the ALJ's decision.

The ALJ could reasonably conclude from the foregoing treatment records that Lewis has recurrent episodes of mild depression, controlled most of the time by medications.  The ALJ could draw an adverse inference as to the credibility of Lewis's claims of greater limitations from the

absence of findings to support those claims and from Dr. Patrick's finding that Lewis has a tendency to feign or exaggerate symptomatology.

In addition to the minimal medical findings, the ALJ found Lewis's work history suggested his subjective limitations lacked credibility. Lewis alleged disability beginning in January 2003, but did not seek treatment for any of his alleged medical conditions at that time. He did not lose his job because his medical condition prevented him from performing work-related activities. He told Dr. Becker he was laid off because he lacked technical skills. *Id.* at 240. He reportedly lost his previous job when his employer hired a relative to take the position. *Id.* at 249. The ALJ properly drew an adverse inference as to Lewis's credibility from this work history. *See Bruton v. Massanari*, 268 F.3d at 828 (Sufficient reasons for discounting subjective testimony include stopping work for non-medical reasons and failure to seek care at the time claimant stopped work).

The ALJ also noted inconsistencies in Lewis's statements over time. For example, after telling Dr. Becker he had been laid off because he lacked technical skills, he told Dr. Deshler he had lost the job because of memory problems. Admin. R. 249. The ALJ also noted vagueness in Lewis's testimony regarding functional limitations. Lewis was unable to estimate how long he could sit, stand, or walk during an 8-hour day or how much he could lift and carry. This reasonably suggests the absence of significant limitations, contrary to his claim of disability. Lewis was also vague and tangential in his responses to examining physicians. For example, when Dr. Patrick asked what his physical problems were, Lewis responded "I just don't feel well most of the time." *Id.* at 231.

In summary, the ALJ considered proper factors and reached his credibility determination based on clear and convincing reasons supported by reasonable inferences drawn from the record as a whole. *Smolen*, 80 F.3d at 1284; SSR 96-7p, 1996 WL 374186. The ALJ's findings are

sufficiently specific to permit the court to conclude he did not discredit Lewis's testimony arbitrarily. *Orteza,* 50 F.3d at 748.

### B.    Lay Witness Statement

Lewis contends the ALJ improperly rejected the written statement of lay witness Ken Williams. Williams stated that Lewis takes care of his wife, who is reportedly disabled and receives payments from the Social Security Administration. Admin. R. 125, 249. He cares for pets. He needs no help with personal care or special reminders to take care of personal needs or take medications. Williams did not know how much time Lewis spent doing house and yard work. He observed that Lewis goes out daily, drives a car, shops in stores, pays bills, and handles money and bank accounts. *Id.* at 125-27.

Williams believed Lewis had back problems affecting his ability to lift, squat, bend, stand, walk, and sit. He did not describe observed behavior or quantify these limitations. For example, he did not know how far Lewis could walk before needing rest. Williams also believed Lewis had emotional and mental problems stemming from being forced out of a job by a former employer. Lewis did not seem to like being around people who were unfair or incompetent and believed people could not be trusted. Williams said Lewis would walk off the job if he had any kind of problem with an employer. Williams indicated Lewis had a short attention span and difficulty remembering verbal instructions. *Id.* at 129-31. Williams opined that Lewis would be "unable to hold down any job due to his disabilities." *Id.* at 131.

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without

comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ considered Williams's written statement and found it generally credible. Indeed, the ALJ indicated the limitations in the RFC assessment were designed to accommodate the general limitations Williams described, *viz.* Lewis's back pain, mental deficits, and difficulty getting along with others. The ALJ found Williams's statements were not sufficiently specific to support additional limitations or complete disability. For example, Williams indicated Lewis's back pain bothered him more the longer he was on his feet, but did not know how long Lewis could walk or stand without resting. Similarly, Williams said Lewis had difficulty with short term memory, but observed that he had no difficulty remembering to pay bills, take medications as scheduled, attend medical appointments, and attend to his personal needs and those of his disabled wife. The ALJ properly weighed Williams's statements about Lewis's mental limitations in light of Dr. Patrick's conclusion that Lewis's cognitive functioning was essentially intact. The ALJ could reasonably conclude that Williams's general statements about back problems, memory problems, and emotional problems, did not overcome the more specific findings he reached based on the medical evidence reviewed previously.

In summary, the ALJ considered the lay witness statements about Lewis's symptoms. He did not disregard the statements without comment. He gave germane reasons for rejecting Williams's opinion that Lewis would be unable to hold down a job due to his back problems, memory problems, and emotional problems.

C.    **Medical Opinions**

Lewis contends the ALJ failed to properly evaluate the opinions of Drs. Patrick, Deshler, and

Moffett.    Dr. Patrick examined Lewis in May 2004 and reached the conclusions described

previously.  Lewis contends the ALJ essentially rejected Dr. Patrick's findings.  Lewis relies on the

following statement from Dr. Patrick's report:

> Mr. Lewis is considered to be at worst mildly impaired in terms of
> understanding and remembering instructions.  His ability to sustain
> concentration and attention likely ranges from mildly to moderately
> limited.  His ability to persist with work-related tasks is deemed to be
> generally intact.  The client's ability to engage in appropriate social
> interaction would appear to be mildly to moderately limited by his
> antisocial and hypochondriacal personality features.

Admin. R. 234-35.

Lewis contends the ALJ should have included moderate limitations in concentration,

attention, and social interactions in the RFC assessment.  Instead, the ALJ concluded Lewis retained

the mental residual functional capacity for all but skilled work and his limitations in social function

would not preclude short and structured contact with the public.  *Id.* at 35.

In claiming moderate mental limitations, Lewis expressly argues the ALJ should have viewed

Dr. Patrick's findings in the light most favorable to him.  Dr. Patrick warned that his evaluation

should be viewed with caution due to Lewis's vague and tangential responses, the limited medical

records supporting his claims, indications that Lewis attempted to falsify or exaggerate

symptomatology including a tendency to feign or exaggerate problems with short-term memory and

concentration, and Dr. Patrick's inability to rule out malingering as a diagnosis.  In addition, Dr.

Patrick found Lewis's cognitive functions and ability to persist in work-related activities generally

intact.  Given these factors, the ALJ was not required to view Dr. Patrick's tentative findings in the light most favorable to Lewis.

The quoted statement indicated the worst possible range of function Dr. Patrick believed Lewis could have was mild to moderate impairment in some categories of function.  The ALJ found Lewis no more than mildly impaired in any category of function, which is within the range given by Dr. Patrick.  Based on the factors described in the preceding paragraph and the record as a whole, the ALJ could reasonably accept the less severe end of the range of function described in Dr. Patrick's report without rejecting his evaluation.  In short, the ALJ did not reject or disregard Dr. Patrick's evaluation.  He considered the report and adequately explained the weight he gave it in his decision.

Dr. Deshler had two counseling sessions with Lewis in July 2004.  Lewis told Dr. Deshler he did not like many people and felt life was unfair to him.  He claimed Dr. Patrick had diagnosed him with posttraumatic stress disorder ("PTSD") and severe depression.  *Id.* at 248-50.  In fact, Dr. Patrick had not diagnosed PTSD and found only mild to moderate depressive symptoms at worst, and did not rule out the possibility that Lewis's symptoms reflected nothing but malingering. *Id.* at 234-35.  Dr. Deshler diagnosed recurrent major depression and suggested weekly counseling sessions, but the absence of additional records suggests Lewis did not follow through with this plan.  Dr. Deshler did no objective testing and did not record clinical observations such as mental status examination findings.  Instead, the notes from the two office visits reflect only Lewis's subjective history and complaints. *Id.* at 248-50.

The ALJ considered Dr. Deshler's diagnosis in context with the record as a whole and concluded that Lewis's mental impairments imposed mild difficulties maintaining concentration,

persistence, and pace, and maintaining social function.  *Id.* at 31, 34.  This does not contradict any findings in Dr. Deshler's treatment notes from July 2004.

Dr. Deshler then saw Lewis "3 times related to this social security issue," in April and May 2007.  *Id.* at 362.  Dr. Deshler completed a questionnaire indicating Lewis had been completely unable to work since July 2000, due to subjective chronic pain, irritability, and social isolation.  *Id.* at 360-67.  The ALJ could not have considered Dr. Deshler's questionnaire because it did not yet exist when the ALJ issued his decision.  The Appeals Council considered the questionnaire and concluded the information it contained did not provide a basis for changing the ALJ's decision.  *Id.* at 6-11.

A reviewing court may consider evidence submitted to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence.  *Ramirez v. Shalala,* 8 F.3d 1449, 1451-52 (9th Cir. 1993).  Accordingly, this court reviews the entire record, including Dr. Deshler's questionnaire, to determine whether the questionnaire undermines the evidentiary basis for the ALJ's decision.

Dr. Deshler's opinion is contradicted by Lewis's work history.  Contrary to Dr. Deshler's opinion, Lewis was able to work until January 2003 and collected unemployment benefits while holding himself out as available for work for another year.  Admin. R. 82, 377.

Dr. Deshler's opinion is also unsupported by the contemporaneous medical records.  These indicate Lewis responded well to antidepressant medications and repeatedly told medical providers he was not depressed, his depression was under good control, and he did not have current symptoms.  *Id.* at 187, 191, 239-40, 242, 267-68, 276-77.  He had an episode of depression in September 2003 associated with a death in his family, but this apparently subsided after Dr. Becker restarted

antidepressant medications. *Id.* at 239-40. He reported a period of uncontrolled depression in April 2006. This episode also apparently subsided as there were no reported symptoms after Dr. Moffett altered the dosage of Lewis's antidepressant medication. *Id.* at 291-93. Other than the two episodes of situational exacerbation, Lewis has reported his depression controlled by medication. There is no indication that Dr. Deshler was aware of this reported control.

Dr. Deshler's questionnaire responses were based on subjective reporting which the ALJ found not credible. Dr. Deshler did not administer objective testing of any kind. He did not record clinical observations. His contemporaneous notes from 2004 reflect only Lewis's subjective complaints and questionable history of prior diagnoses. The symptoms Dr. Deshler found on his questionnaire were taken from a checklist Lewis completed. *Id.* at 362.

Dr. Deshler's questionnaire does not undermine the evidentiary basis for the ALJ's decision. The ALJ found Lewis's subjective reporting lacked credibility and Dr. Deshler provided no other rationale for the information found in his questionnaire. An ALJ is entitled to reject a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). He can reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144 at 1149 (9th Cir. 2001). Because Dr. Deshler's questionnaire responses were premised primarily on Lewis's subjective statements and unsupported by clinical findings, the information did not provide a basis for changing the ALJ's decision.

Dr. Moffett became Lewis's primary care physician in October 2005. On July 14, 2006, Lewis reported his lower back had been painful recently. Admin. R. 298. Lewis said his back pain had commenced one week earlier when he was changing the antifreeze in his car. *Id.* at 294. He

asked Dr. Moffett to sign a release from mowing the lawn and doing other manual labor required as a condition of his subsidized housing. *Id.* at 298, 330. Dr. Moffett checked a box on the release form indicating Lewis was an "Individual with Disabilities" as that term is used in Section 504 of the Rehabilitation Act of 1973. Lewis contends the release form establishes he cannot perform manual labor or stand or sit for extended periods.

The ALJ considered this opinion but gave it little weight in his decision. An ALJ can reject a treating or examining physician's opinion in favor of the conflicting opinion of another physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it for clear and convincing reasons. *Id.*

The ALJ did not accept that the release form established persistent functional limitations. Although MRI scans showed degenerated discs at two vertebral spaces for two years, Lewis did not complain of any exacerbation of symptoms until he requested the release. Admin. R. 35. Indeed, Lewis reported his increased pain had begun only one week earlier. *Id.* at 294. Dr. Moffett obtained generally normal findings on examinations in July and August 2006. There was no change on repeat MRI images or in Dr. Moffett's clinical findings that would support a drastic ongoing change in the severity of Lewis's pain.

In addition, the release form does not purport to establish the duration of the limitations it described. Unlike the definition of "disability" used for cases under the Social Security Act, the definition on the release form does not include a duration requirement. There is no indication on the

form of when the limitations began or might be expected to resolve. Based on Lewis's report to Dr. Moffett, the ALJ could reasonably find the exacerbation in pain level began only one week before the release was requested.

In addition, the form Dr. Moffett signed did not purport to establish the specific limitations Lewis contends it did. Dr. Moffett opined only that Lewis met the definition of an "Individual with Disabilities." That term is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities" or "has a record of such an impairment" or "is regarded as having such an impairment." *Id.* at 331. This broad definition does not establish any specific functional limitation.

The specific limitations Lewis hopes to prove, were actually provided by Lewis himself, not by Dr. Moffett. Lewis wrote on his Request for a Reasonable Accommodation that he wanted to be released from "lawn mowing, yard work and manual labor, standing or sitting for extended periods of time." *Id.* at 330. He indicated he needed this accommodation because he had "herniated disks in the lower back that cause pain." *Id.* Dr. Moffett did not concur in these specific limitations; he simply signed off on the broader definition described previously. To the extent Dr. Moffett's signature was an endorsement of the specific limitations, the ALJ was not required to accept a physician's opinion premised primarily on subjective complaints that the ALJ found unreliable. *Fair*, 885 F.2d at 605; *Tonapetyan,* 242 F.3d at 1149.

In summary, the ALJ considered the opinions of Drs. Patrick and Moffett and sufficiently explained the weight he gave them in his decision. The information in the post-decision questionnaire of Dr. Deshler did not provide a basis for changing the ALJ's decision.

### D.   **Development of the Record**

Lewis contends the ALJ failed to develop the record because he did not properly assess his credibility.  That argument is rejected for reasons previously described.

Lewis contends the ALJ failed to develop the record regarding PTSD and agoraphobia.  In social security disability cases, the burden of proving impairment is on the claimant.  *Yuckert,* 482 U.S. 137, 146 & n.5; *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).  Concurrently, "the ALJ has a duty to assist in developing the record." *Reed v. Massanari,* 270 F.3d 838, 841 (9th Cir. 2001) (quoting *Armstrong v. Comm'r of the Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir. 1998)).  An ALJ assists in development by requesting records and reports from physicians identified by the claimant. 20 C.F.R. §§ 404.1519(d), 416.919(d).   The ALJ may order a consultative evaluation if the information available from the claimant's source is inadequate or ambiguous.  20 C.F.R. §§ 404.1512(f), 416.912(f).  The ALJ's duty to conduct a further inquiry is triggered when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence and determination of the issue of disability.  *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan,* 242 F.3d at 1150.

Lewis points to no credible evidence that he has PTSD or agoraphobia. Lewis told Dr. Deshler in July 2004 that he had been diagnosed by Dr. Patrick with PTSD.  Admin. R. 249-50.  This was a misrepresentation by Lewis of Dr. Patrick's diagnosis.  The statement does not trigger the ALJ's duty to inquire further.  The only suggestion of agoraphobia also comes from Lewis himself, on the check list of symptoms he completed with Dr. Deshler in July 2007.  *Id.* at 361.  There was no ambiguity or inadequacy regarding PTSD or agoraphobia.  There  was simply a failure of proof. The ALJ had no duty to develop the record further with respect to these allegations.

### E.    Medical Expert

Lewis contends the ALJ erred by failing to obtain the opinion of one or more medical experts as to whether his impairments satisfied the criteria for any of the presumptively disabling conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  Lewis did not identify which of the listed impairments he believes he might satisfy or offer any theory as to how his impairments might combine to establish medical equivalence with the criteria for a listed impairment.  *See Lewis,* 236 F.3d at 514 (The court will not find error in the ALJ's step 3 analysis if the claimant proffers no plausible theory as to how his impairments are medically equivalent to the criteria for a listed impairment.).

The ALJ considered the opinions of the state agency consulting medical and psychological experts.  Admin. R. 34, 133-34, 251-66.  The ALJ is not required to call upon a medical expert unless additional medical evidence is received which, in the ALJ's opinion, may change the state agency consultants' finding that the claimant's impairments are not equivalent in severity to any of the listed impairments.  SSR 96-6p, 1996 WL 374180 at *3-4.  Because Lewis did not proffer any theory as to how his impairments might satisfy the criteria for a listed impairment or identify any evidence suggesting such equivalence, the ALJ was not required to obtain a medical expert's opinion on that issue.

### F.    SSR 96-8p

Lewis contends the ALJ failed to comply with the requirements of SSR 96-8p, 1996 WL 374184. SSR 96-8p requires an the ALJ to consider all the relevant evidence in the case record, all the allegations of physical and mental limitations and restrictions, and any available information about symptoms.  Lewis contends the ALJ did not meet these requirements because he did not

19 - OPINION AND ORDER

properly consider his ability to work on a regular and continuing basis for 8 hours a day, 5 days a week.  He contends the ALJ failed to consider all of his impairments or provide a function-by-function analysis.  Lewis contends the ALJ failed to consider additional impairments of reduced concentration, stamina, and pace, reports of balance problems and falling episodes, back pain, unspecified limitations due to depression, extreme nervousness, and traumatic stress disorder.

In support these additional limitations, Lewis cites only his subjective testimony which the ALJ found lacking in credibility for reasons that are abundantly supported in the record.  Lewis has not identified credible evidence suggesting he cannot work on a regular and continuing basis which the ALJ failed to consider.  He did not did not identify credible evidence of functional limitations which the ALJ failed to consider.  The ALJ's written decision demonstrates that he considered all the evidence in the case record and all the allegations of limitations and restrictions.  He did not find support in the record for the additional limitations Lewis now claims.  Accordingly, Lewis has failed to satisfy his burden of proving those limitations and the ALJ's RFC assessment complied with the requirements of SSR 96-8p.

## II.    <u>Vocational Evidence</u>

The ALJ determined that Lewis retained the ability to perform his past work as a maintenance assistant.  He made the alternative finding that other work existed in the national economy that a person with Lewis's RFC could perform.  The ALJ relied on testimony from the VE for both findings.

Lewis contends the ALJ elicited vocational testimony from the VE with a hypothetical question that did not contain all of his limitations and restrictions.  He contends the ALJ should have included additional limitations based on alleged errors in the ALJ's RFC assessment.  His arguments

in support of those errors cannot be sustained for reasons discussed previously in this opinion.  The ALJ considered all the evidence and framed his vocational hypothetical question based on the limitations supported by the record as a whole.  The hypothetical limitations reflected reasonable conclusions that could be drawn from the record.  An ALJ is not required to incorporate limitations based on evidence that he properly discounted.  *Batson,* 359 F.3d at 1197-98; *Osenbrock v. Apfel,* 240 F3d 1157, 1164-65 (9th Cir 2001).

Lewis argues the ALJ's hypothetical was erroneous because it did not include exertional limitations.  The ALJ found Lewis limited to work requiring medium exertion, but neglected to state this limitation in the hypothetical question.  Admin. R. 388.  This error was harmless, however, because the VE identified only medium and light occupations as examples of work available to an individual fitting the hypothetical limitations.  *Id.* at 387, 390-91.  *See Stout,* 454 F.3d at 1054-55 (An ALJ will not be reversed for a mistake that is nonprejudicial to the claimant or inconsequential to the ultimate determination).

Lewis argues the ALJ failed to perform a functional analysis of his past work before concluding he retained the capacity to return to his past work as a maintenance assistant.  The ALJ began his vocational inquiry by confirming the VE had reviewed the vocational portion of the record, which is comprised of the claimant's description of his past work.  Admin. R. 387.  He then relied on the VE's testimony regarding the mental and physical demands of Lewis's past work.  Lewis has not identified functions required in his past work that are inconsistent with the ALJ's RFC assessment.  Accordingly, the ALJ's functional analysis was sufficient, and his conclusion that Lewis retains the capacity to perform his past relevant work as a maintenance assistant is upheld.  The ALJ's conclusion that Lewis can perform other work in the national economy is also upheld.

The court must uphold the Commissioner's findings of fact if they are supported by substantial evidence, even if the evidence can rationally be interpreted in a way that supports the claimant's assertion of additional limitations. *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). Lewis's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

## CONCLUSION

For these reasons, the court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

Dated this _____29th_____ day of January, 2009.

    _/s/ Garr M. King_____
GARR M. KING
United States District Judge